LEVI H. MAY *vs.* DOCITE LABBE.

Aroostook.   Opinion October 3, 1914.

*Boundaries.   Description.   Identity.   Possession.   Real Action.   Title.*
*Writ of Entry.*

1.   In a real action tried upon a plea of nul disseisin, a warranty deed to the plaintiff, or a warranty deed to one from whom the plaintiff has a quitclaim deed, is sufficient prima facie evidence of title in the plaintiff to authorize a verdict in his favor, unless the defendant proves a better title.

2.   A grantee's occupation, in the absence of evidence to the contrary, is presumed to be under and in accordance with his deed, and co-extensive with the premises therein described.

3.   Where in the deeds to the plaintiff the tract is bounded on the east "by land *occupied* by" the defendant, in the absence of evidence to the contrary, the presumption is that the east line of the plaintiff's tract is the west line of the defendant's land as it is described in his deed.

4.   There was evidence sufficient to authorize a jury to find that the land described in the deeds to the plaintiff included the same land described in his writ.

On exceptions by plaintiff.   Exceptions sustained.

This is a real action to recover a certain described tract of land situate in the town of Fort Kent, in the County of Aroostook.   The defendant pleaded the general issue and filed a disclaimer as to a part of the described premises.   At the conclusion of the plaintiff's evidence, the presiding Justice directed a verdict for the defendant. The plaintiff excepted to the ruling directing said verdict.

The case is stated in the opinion.

*James D. Maxwell,* for plaintiff.

*J. A. Laliberte, A. S. Crawford,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, CORNISH, KING, HALEY, HANSON, PHILBROOK, JJ.

KING, J.   This action is a writ of entry to recover a tract of land in the town of Fort Kent, Aroostook County.   The plaintiff claims to own the westerly part of that portion of lot 18 south of the St.

Francis Road, and the defendant owns the easterly part thereof. Their ownerships adjoin, and the real controversy between the parties is the location of the line, extending from the St. Francis Road southerly to the south line of lot 18, which marks the eastern bound of the plaintiff's land and the western bound of that of the defendant.

The demanded premises are thus described in the writ: "Commencing at an iron pin driven near the center of Campbell Brook at the bridge where the St. Francis Road crosses said brook, thence southerly parallel with the east line of said lot 18 to the south line of said lot 18; thence westerly along the south line of lot 18 forty eight rods to the southwest corner of lot 18; thence northerly along the west line of lot 18 to the St. Francis Road; thence easterly along the line of the St. Francis Road to the place of beginning."

The defendant filed a disclaimer as to all the premises demanded except a strip 183.8 feet wide on the easterly side thereof, between the two lines as claimed on the one side and the other as the true line, and as to that strip he pleaded *nul disseisin.*

The plaintiff introduced several deeds of conveyance to himself, and to others under whom he claimed, and also the testimony of two surveyors each of whom had made certain surveys and a plan of the premises, and rested his case, whereupon, on motion therefor a verdict was directed for the defendant, and the case is before this court on exceptions to that ruling.

There was no evidence of actual possession of the demanded premises by the plaintiff or those under whom he claimed title. But in a real action tried upon a plea of *nul disseisin,* a warranty deed to the plaintiff, or a warranty deed to one from whom the plaintiff has a quitclaim deed, is sufficient prima facie evidence of title in the plaintiff to authorize a verdict in his favor, unless the defendant proves a better title. *Rand* v. *Skillin,* 63 Maine, 103.

The plaintiff introduced, among others, two conveyances to himself containing full covenants of warranty, one a warranty deed from Susan R. Mitchell, and the other a warranty mortgage deed from Charles Wiles which had been foreclosed.

But the defendant contends that there was no sufficient proof to identify the land described in the writ as the same land described in those warranty deeds to the plaintiff. In both of them the description of the land conveyed is substantially the same, and in the mortgage deed it is as follows: "The west part of Lot (Road) number

(18) eighteen. Being my homestead on which I now live, and bounded on the northerly side by the St. John river, on the easterly side by land occupied by Docite Labbe, on the southerly by the rear line of said lot number 18, and on the westerly side by land of John White."

It is suggested that neither of the boundaries of the land as described in the mortgage is the same as the corresponding boundary of the lot as described in the writ, but we apprehend that the defendant relies chiefly on his claim that the eastern line in the mortgage description is not shown to be the same as the eastern line in the writ description. We will, however, briefly refer to each of the boundaries.

1. An examination of the plan shows that lot 18 is bounded on the north by the St. John river and that the St. Francis Road crosses the lot from east to west some distance south of the river. The tract described in the mortgage is the west part of lot 18, extending the length of the lot from its rear on the south to the St. John river on the north, while the lot described in the writ extends only from the south line of lot 18 to the St. Francis Road. If, however, the land described in the mortgage included that described in the writ, it cannot be a material objection that it includes more than that.

2. It seems certain that the southerly line of the tract described in the writ is the same as the southerly line of the tract described in the mortgage, for the writ description bounds it on the south by "the south line of lot 18," and the mortgage description bounds it on the *south* by "the *rear* line of said lot number 18," and that must be the south line of the lot.

3. In the writ description the tract is bounded on the west by "the west line of lot 18," while in the mortgage description the language is "and on the westerly side by land of John White." But in the mortgage the tract described as conveyed is called "the *west part*" of lot 18. Where is the westerly boundary of the "west part" of lot 18? Is it not the west line of the lot? We think it should be so inferred, prima facie at least. And the fact that the mortgage description specifies the westerly boundary of the lot as land of John White is not inconsistent with the fact that it is also the west line of lot 18. The writ tract is bounded on the west by the west line of lot 18, and we think the mortgage tract is so bounded on the west, by a fair construction of its description.

4. In the writ the easterly line of the lot is described as follows: "Commencing at an iron pin driven near the center of Campbell Brook at the bridge where the St. Francis Road crosses said brook, thence southerly parallel with the east line of said lot 18 to the south line of said lot 18." In the mortgage the tract is bounded on the east "by land *occupied* by Docite Labbe." No evidence was introduced to show the western line of Labbe's occupation at the time the mortgage was given, July 31, 1896. But the plaintiff introduced Labbe's deed (a warranty deed to him dated September 28, 1881) containing the following description: "A parcel of land in Fort Kent being a part of lot No. 18 of the Saint John River lots and bounded as follows: Commencing at the southeast corner of lot No. 18, thence running northerly on the east line of lot No. 18 to the Campbell Brook, thence in a southerly course of said brook to a post on the south side of the County Road, thence southerly parallel with the east line of said lot No. 18 to the rear line of said lot, thence easterly to the first mentioned bound."

A grantee's occupation, in the absence of evidence to the contrary, is presumed to be under and in accordance with his deed, and co-extensive with the premises therein described. *Moulton* v. *Edgecomb*, 52 Maine, 31. In the absence of any evidence in this case showing that Labbe was in occupation of any land west of the line described in his deed, that line is presumed to be the line of his occupation. It follows, then, that the tract described in the mortgage to the plaintiff is bounded on the east by the west line of the tract as described in Labbe's deed. Where is that line? Is it substantially the same as the east line of the lot described in the writ? Each line extends from a point at the County Road, called also the St. Francis Road, "southerly parallel with the east line of said lot" to the rear or south line of the lot. Do those lines commence at the same point? From a study and consideration of the deeds, the plans of the surveyors and their testimony, we think the reasonable conclusion is that they do commence at substantially the same point.

The northeast corner of the land described in the Labbe deed is at the point where the east line of lot 18 crosses the Campbell Brook, and the plan shows that point to be not far south of the St. John River. From that point the boundary called for in the deed, taken in connection with the deed therein referred to and introduced, is *up the brook* in a southerly or southwesterly course "to a post on the

south side of the County Road." The plan shows the location of the Campbell Brook, and from that it clearly appears that the brook crosses the St. Francis Road only at one point. It follows, therefore, from the description in the Labbe deed, considered in connection with the plan, that the location of the post called for in the deed as on "the south side" of the County Road is at the place where the road crosses the brook. The iron pin called for in the writ description is also at the place "where the St. Francis Road crosses said brook." In the deed the post is designated as on the "south side" of the road, and in the writ the "pin" is described as driven "near the center" of the brook. It is true that it is not shown that the location of the pin is identical with that of the post, but if their locations are not precisely the same, they cannot be but a few feet apart, for they are both where the road crosses the brook, and the brook is quite small.

It seems perfectly clear that the northwest corner of Labbe's lot as described in his deed is at the junction of the road and brook, and from that point his west line runs southerly parallel with the east line of lot 18. It is equally clear that the northeast corner of the lot described in the writ is also at the same junction of the road and brook, and that from there its east line also runs southerly parallel with the east line of lot 18. And we think it is a proper inference, from all the evidence in the case, and in the absence of any proof to the contrary, that the west line of the Labbe lot is substantially the same as the east line of the lot described in the plaintiff's writ.

It is therefore the opinion of the court, after a careful examination of the deeds introduced, considered in the light of the facts disclosed by the plan and the testimony of the surveyors, that there was at least prima facie evidence that the plaintiff had title to the disputed strip or to some part of it.

Accordingly the entry must be,

*Exceptions sustained.*